For the reasons assigned the judgment appealed from is affirmed.

29 So.2d 473

**PALINE v. HEROMAN (SHERRILL, Intervenor).**

No. 38303.

Dec. 13, 1946.

Dissenting Opinion Dec. 20, 1946.

Scallan E. Walsh, of Baton Rouge, for plaintiff and appellant.

Greene & Womack and R. Paul Greene, all of Baton Rouge, for intervenor.

Parker, Seale & Kelton, of Baton Rouge, for defendant-appellee.

KENNON, Justice.

The judgment appealed from rests on an interpretation of Article 1022 of the Revised Civil Code.

Joseph Paline died intestate, leaving his widow and their two sons, Paul and Emile, and certain community property, title to part of which is at issue in the present suit. By authentic act, both sons renounced the succession and their mother was placed in possession of the entire estate—one half in her own right and one half by virtue of the childrens' renunciation. Upon the widow's death, she bequeathed to her two children (the ones who had renounced in her favor) the real property owned by the community. Emile Paline, plaintiff in this suit, through a partition with his brother, Paul Paline, acquired title to a 2.83 acre tract out of this property and on December 5, 1945, he entered into an agreement with Fred I. Heroman, Jr., the defendant to sell him this tract of land. This suit was filed for specific performance when Heroman refused to accept plaintiff's title to the property as merchantable. Mrs. Virginia Paline Sherrill, one of the five children of the plaintiff's brother, Paul Paline, intervened in the suit, claiming as heir of Joseph Paline, her grandfather, an undivided one tenth interest in the property. The lower court rendered judgment in favor of defendant, Heroman, rejecting plaintiff's demand for specific performance and recognizing intervener, Mrs. Virginia Pa-

line Sherrill, as owner of an undivided one tenth interest in the property. Emile Paline appealed.

The question presented is whether the husband's portion of the community property, after the renunciation of his children, passed to the surviving spouse in community or to the five children of the renouncing heir, Paul Paline. (Mrs. Sherrill, intervener, is one of these children.)

Plaintiff argues that when the two heirs of Joseph Paline renounced his succession, which consisted entirely of community property, title to his undivided one half interest in the property vested in his surviving widow in community under the provisions of Articles 915 and 1022 of the Revised Civil Code. Article 915 provides: "When either husband or wife shall die, leaving neither a father nor mother nor descendants, and without having disposed by last will and testament of his or her share of the community property, such undisposed of share shall be inherited by the surviving spouse in full ownership. In the event the deceased leaves descendants, his or her share in the community estate shall be inherited by such descendants in the manner provided by law. Should the deceased leave no descendants, but a father and mother, or either, then the share of the deceased in the community estate shall be divided in two equal portions, one of which shall go to the father and mother or the survivor of them, and the other portion shall go to the surviving spouse, who, to-gether with father or mother inheriting in the absence of descendants, as provided above, shall inherit as a legal heir by operation of law, and without the necessity of compliance with the forms of law provided in this chapter for the placing of the regular heirs in possession of the succession to which they are called."

Under Article 915 quoted above, the sons inherited (subject to their acceptance) all of their father's portion of the community.

Section 2 of Chapter 6 of the Revised Civil Code deals with the manner in which successions are accepted, and renounced. The articles of this chapter dealing with the rights of creditors and heirs who benefit by the renunciation are numbers 1021, to 1928, inclusive. Article 1022 reads:

"The portion of the heir renouncing the succession, goes to his coheirs of the same degree; if he has no coheirs of the same degree, it goes to those in the next degree.

"This right of accretion only takes place in legal or intestate successions. In testamentary successions, it is only exercised in relation to legacies, and in certain cases."

Mrs. Sherrill, the intervener, contends that since Paul Paline and Emile Paline, who were all the coheirs of the same degree, renounced, the succession under the above-quoted article "goes to those in the next degree" and, therefore, she and her sisters and brothers, five in all, being all the grandchildren of the deceased, are

"those in the next degree" and inherit in their own right. The contention is based upon the theory that the phrase in Article 1022, R.C.C., "next degree" refers to persons who are related by blood in the next degree *to the renouncing heir*.

At the time the Civil Code was adopted, only those who were kinsmen of the deceased were called to his succession and, hence, the word "degree" was generally conceded to be limited to people having blood relationship to the decedent. Article 915 was later amended to include the wife and as amended again in 1938 it provided that she "* * * shall inherit as a legal heir by operation of law, and *without the necessity of compliance with the forms of law provided in this chapter for the placing of irregular heirs in possession of the successions to which they are called.*" Thus, a study of Article 915 (as amended), the other articles in the chapter relating to renunciation of successions, and a careful analysis of Article 1022 leads to the conclusion that the expression in Article 1022 "those (coheirs) in the next degree" refers to the heirs of the de cujus who are next in rank or right to inherit in the succession which the heir has renounced, By this amendment, the wife was virtually—for succession purposes as set forth in Article 888—placed in the same category as a blood relation to the deceased.

To hold that the effect of the 1938 amendment is to include the wife in the

definition of "those in the next degree" in Article 1022, is not inconsistent with the dictionary given meaning of the word "degree".

The first and second definitions of the word "degree" in Webster's New International Dictionary, 2d Ed., are:

"1. a step, stair, or rung; now a step-like member of a series; a tier, bank, rank or the like.

"2. A step or station in any series; a point or stage."

Also,

"4. A remove in the line of descent, determination in the proximity of blood; one remove in the chain of relationship; as a relation in the third degree."

In the Winston Dictionary, Encyclopedia Edition, the first definition of the word "degree" is a step or grade in a series.

It is in full conformity with its dictionary meaning to hold that "next degree" in Article 1022 can mean those (coheirs) who are next in rank or order among those entitled to inherit under the provisions of Article 915.

The renunciation made by Paul Paline and Emile Paline contains the following language: "They now make public, express and formal renunciation of and to the succession of the deceased, Joseph Paline, to be used and to serve and avail as the occasion shall require". Immediately following this renunciation in the ad-

mitted statement of facts, it is set forth that Mrs. Denise Granier Paline was recognized in the succession proceedings as surviving spouse and sole heir at law of all the property belonging to the community of acquets and gains. Thus, it seems that it was the clear intention of the renouncing children to vest full, complete, and irrevocable title in their mother to all property of whatever nature left by their father, and to do so to the exclusion of their own children.

The interpretation that the beneficiary of a renunciation under Article 1022 is, when all the coheirs entitled to the succession in the first instance renounce, the heir next called to the succession by operation of law rather than the kinsman next in kin is indicated by a sentence under the discussion of "Seizin of Heirs", page 199 of the Alfred Bonomo Edition of Saunder's Lectures on the Civil Code: "* * * Now if the heir who is called to accept, renounces then the seizin goes *to the heir in next order of right."*

This interpretation of Article 1022 gives meaning to the provisions of the preceding Article (1021) which sets forth the rights of creditors of a renouncing heir. The third paragraph of that article reads: "If, therefore, after the payment of the creditors, any balance remain, it belongs to his coheirs who may have accepted it, or if heir who has renounced be the only one of his degree, it goes to the heirs who come after him."

The article does not mention "those in the next degree of blood relationship". The expression "the heirs who come after him" is consistent with the interpretation of Article 1022 that "those in the next degree" refers to "those in the next category or rank" (as heirs of the decedent).

Article 946 declares that if an heir rejects (renounces) the succession, he is considered as never having received it, and it follows that the rights of other heirs become the same as if the renouncing heir had never been an heir, in fact, as if he had never existed. Nor can the grandchildren inherit by representation the portion renounced by the living sons, as there can be no representation of a living person. Article 899, R.C.C.

The case of Jacob v. Falgoust, 150 La. 21, 90 So. 426, which involved the renunciation of the community by the descendants of the deceased (the wife) is to some extent applicable here. The plaintiffs were the nieces and nephews of the deceased, who, as in the present case, claimed their right of inheritance by accretion under the provisions of Article 1022. The fact in that case that the heirs renounced the community and not the succession makes no difference in the present case as the Paline succession and entire estate consisted only of community property and there were no debts. The Court held that the renunciation of the children gave the nieces and nephews no interest in the community property; that the portion which the heirs

of the wife renounced belonged to the surviving partner in community. It was also held that the renunciation of a community by the heir of the wife, has, like that of a succession, a retrospective effect; the heir of the wife who renounces the community is considered as never having had any interest in it.

Reading and considering together the provisions of Article 915 which deals with the rights of heirs to inheritance of community property and sets forth as recipients, first descendants and secondly, ascendents and surviving spouse as coheirs, and Article 1022, which states that the portion of renouncing heirs goes "to those in the next degree", we conclude that since all the children of the deceased spouse renounced the succession, the surviving widow (in the absence of parents) became recipient of the accretion as she is the heir in the next rank or degree, under the provisions of Article 915, R.C.C.

For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that there be judgment in favor of plaintiff, Emile Paline, and against the defendant, Fred I. Heroman, Jr., ordering the specific performance of the contract aforesaid and ordering defendant to accept title to the property involved in accordance with the agreement entered into by him and plaintiff on December 5, 1945. It is further ordered that upon plaintiff's tendering to defendant a deed to the said property valid in form, the defendant is adjudged and decreed the owner thereof and indebted to the plaintiff in the full sum of $7,000, and that there be judgment in favor of plaintiff and against defendant for $5,600, and recognizing plaintiff as entitled to receive the deposit of $1,400, with recognition of plaintiff's vendor's lien and privilege on said property to secure the payment of the unpaid portion of the purchase price.

It is further ordered that there be judgment in favor of plaintiff, rejecting intervener's demands. Costs of both courts to be paid equally by defendant and intervener.

FOURNET, J., dissenting.

HAWTHORNE, Justice (dissenting).

Plaintiff, Emile Paline, instituted this suit for specific performance of a contract for the purchase of a tract of land situated in the Ninth Ward of the Parish of East Baton Rouge, containing approximately 2.83 acres, the property being fully described in his petition.

Defendant, Fred I. Heroman, Jr., answered the suit, denying that plaintiff had a good and merchantable title to the property, and alleging that for this reason he refused to accept title to the real estate but that he was ready, willing, and able to take title if and when it was judicially determined that plaintiff had a clear and merchantable title. In this answer de-

fendant set forth what he considered were the defects in plaintiff's title. He prayed for judgment in the sum of $1,400, the amount named in the contract to purchase as the deposit on the purchase price, which amount defendant had paid.

Mrs. Virginia Paline Sherrill intervened in the suit, claiming a one-tenth interest in the property, and praying to be recognized as the owner of such interest.

The case was tried below on an agreed stipulation of facts made by all parties to the suit. The district court rejected plaintiff's demands for specific performance, awarded to defendant judgment in the sum of $1,400, and recognized intervener to be the owner of an undivided one-tenth interest in the property. From this judgment plaintiff, Emile Paline, has appealed to this court.

Joseph Paline was married one time and then to Mrs. Denise Granier Paline, and of this marriage two children were born, Paul Paline and plaintiff herein, Emile Paline. Joseph Paline, father of plaintiff, died intestate on February 10, 1941, leaving property which included the real estate involved in this suit. All of the property owned by the deceased at the time of his death was property acquired during the community of acquets and gains which existed between him and his wife, Mrs. Denise Granier Paline, and was community property. Joseph Paline was survived by his wife and two children.

Paul and Emile Paline, the only forced heirs of the deceased Joseph Paline, by notarial act dated May 20, 1941, expressly, publicly, and formally renounced the succession of their father. His succession was formally opened on October 17, 1941, and his widow, Mrs. Denise Granier Paline, was recognized as widow in community, entitled as such to an undivided one-half of all the property belonging to the community in her own right, and, in view of the renunciation filed therein by the only forced heirs at law of her deceased husband, she was recognized as the owner of the other one-half of the property belonging to the community as an heir of her husband. In other words, the surviving wife was recognized as the owner of all the property belonging to the community and was accordingly set into, and placed in, possession thereof.

On February 10, 1941, the date of the death of Joseph Paline, and on May 20, 1941, the date of the renunciation of the succession of Joseph Paline by Emile and Paul Paline, both Emile and Paul Paline were married. Emile Paline had no children, but Paul Paline had five children, one of whom is Mrs. Virginia Paline Sherrill, intervener herein.

Mrs. Denise Granier Paline, widow of Joseph Paline, died on September 11, 1944, leaving a last will and testament under which plaintiff acquired the 2.83 acres here involved, which tract comprised a part of the community property of which Mrs.

Denise Paline was recognized as owner and placed in possession by judgment in the succession of Joseph Paline.

Under the facts in this case, the sole question involved is whether the renunciation of the succession of the husband, Joseph Paline, by his two children, Emile and Paul Paline, vested title in the surviving wife, Mrs. Denise Granier Paline, when there were descendants of one of the children, one of whom is the intervener, Mrs. Virginia Paline Sherrill.

Plaintiff contends that, as the only property owned by Joseph Paline at his death was community property, when his two sons, Paul and Emile, renounced his succession, his undivided one-half of the community property was inherited, under the provisions of Article 915 of the Revised Civil Code, by the widow in community, from whom plaintiff contends that he acquired title to the 2.83 acres involved in this suit. In support of this contention he cites and relies on the case of Jacob et al. v. Falgoust et al., 150 La. 21, 90 So. 426, which the majority opinion finds to be to some extent applicable.

In that case suit was instituted by the nephews and nieces of Felicie Malus for the purpose of recovering an undivided one-half interest in certain property situated in the Parish of St. James. The property was acquired by Jules Jacob, Sr., during the regime of the community of acquets and gains which existed between him and his wife, Felicie Malus, and hence

belonged to the community. Felicie Malus died, leaving three children, all issue of her marriage with Jules Jacob, Sr. These heirs by notarial act renounced the community which existed between their mother and father. Plaintiffs alleged and contended that, when the children of Felicie Malus renounced their mother's one-half interest in the community, it fell to them as next of kin. The defendants contended that it remained in the husband, Jules Jacob, Sr., who was head and master of the community and responsible for its debts.

This court said that the only question to be decided under the facts of that case was who became the owner of the wife's half of the community property when her children renounced the community which existed between their father and mother.

In the case at bar, plaintiff-appellant quotes and relies on the following statement made in the Jacob case:

"By article 2409 of the Revised Civil Code, in a partition of the effects of the community, both husband and wife are declared to be equally liable for their share of the debts contracted during marriage. By article 2410, the wife and her heirs and assign are, however, permitted to exonerate themselves from those debts by renouncing the community. By Act No. 4 of 1882, the wife is permitted to accept the community, under the benefit of inventory, in the same manner and with the same benefits and advantages as heirs are allowed by existing laws to accept a succes-

sion. The law does not, however, expressly provide what shall become of the wife's half, in the event she renounces the community; and the same is true when her heirs renounce it. In the matter of successions—but this was not the renunciation of a succession—article 1022 of the Revised Civil Code provides that, when an heir renounces a succession, his portion goes to his coheirs of the same degree, and that, if he has no coheirs of that degree, it goes to those in the next degree; but, as said, no express provision exists showing where the wife's interest falls when she or her heirs renounce the community. The question, however, is not a new one in our jurisprudence. That interest remains in the husband by force of his original title, and this was so held in the case of Fabre v. Hepp, 7 La.Ann. [5], 6, where it is said:

" 'The renunciation of a community by the heir of the wife, has, like that of a succession, a retrospective effect; the heir of the wife who renounces the community is considered as never having had any interest in it, and his portion belongs to the surviving partner in community by force of his original title, jure non decrescendi.' "

This court further stated in the Jacob case: "It may be added that it does not follow, because the heirs renounced the community, that they renounced their mother's succession. As a matter of fact, they accepted that, which included a large claim against the community, which doubtless they desired to enforce."

Relying on the authority of that case, plaintiff in the case here under consideration takes the position that, when he and his brother, the heirs of Joseph Paline, renounced the succession of their father, this renunciation had a retrospective effect, and that they were considered as never having had an interest in his succession. Hence he argues that, under the provisions of the Civil Code, the surviving spouse in community inherited the husband's share therein, and that this is especially so where the succession consists only of community property.

I am of the opinion that the position taken by plaintiff-appellant herein is not well founded and that the Jacob case is not authority for his contention. In that case it is to be noted that the heirs of the wife renounced the *community* that existed between their mother and father, as they plainly had a right to do under the provisions of Articles 2410, 2411, and 2423 of the Revised Civil Code, as follows:

"Both the wife and her heirs or assigns have the privilege of being able to exonerate themselves from the debts contracted during the marriage, by renouncing the partnership or community of gains." (Article 2410)

"The wife, who renounces, loses every sort of right to the effects of the partnership or community of gains.

"But she takes back all her effects, whether dotal or extradotal." (Article 2411)

"In case of the dissolution of the marriage by the death of the wife, her heirs may renounce the partnership or community of gains, within the term and according to the form which the law prescribes to the surviving wife." (Article 2423)

In the case here under consideration, the two children and forced heirs of Joseph Paline renounced the *succession* of their father, and not the community that existed between him and their mother. In truth and in fact, I know of no authority which would permit the husband, much less his heirs, to renounce the community.

As far back as 1845, in the case of Succession of Baum, 11 Rob. 314, this court said: "* * * The heirs of the wife had the privilege of renouncing the partnership or community of gains, to exonerate themselves from the debts contracted during the marriage (Civil Code, art. 2379 [2410]); *but the husband, being the head and master thereof, could never do so, either directly or indirectly.*" (All italics mine.)

Mrs. Harriet S. Daggett has set forth clearly and logically the reason why the husband does not have the privilege of renouncing the community or accepting it with special privileges, as follows: "The husband does not have the privilege of renouncing the community or of accepting with special privileges for the very obvious reason that he is head and master of the community and could not be permitted to retreat from the obligations which he himself has made." "The Community Property System of Louisiana" (Reprinted with Addenda, 1945), Chapter XIII, "Acceptance or Renunciation of the Community", page 77.

In this case it so happens, as contended by appellant, that all the property left by the decedent, Joseph Paline, was community property. But, in my opinion, this fact makes no difference whatsoever, for the reason that his two children renounced his succession, and succession is defined as the transmission of the rights and obligations of the deceased to the heirs and signifies also the estates, rights, and charges which a person leaves after his death. Revised Civil Code, Articles 871, 872. His interest in the community property in this case constituted the estate of the deceased and the succession which his heirs renounced.

Article 915 of the Civil Code, in dealing with the inheritance and disposition of community property, states: "When either husband or wife shall die, leaving neither a father nor mother nor descendants, and without having disposed by last will and testament of his or her share of the community property, such undisposed of share shall be inherited by the surviving spouse in full ownership. In the

event the deceased leave descendants, his or her share in the community estate shall be inherited by such descendants in the manner provided by law. * * *"

Under the provisions of this article, in the absence of the renunciation the share of the community property belonging to the decedent, Joseph Paline, would have been inherited by his two sons, who were his descendants and forced heirs.

I agree with the court in its majority opinion that Mrs. Virginia Paline Sherrill, intervener, a daughter of Paul Paline and a granddaughter of the deceased Joseph Paline, could not inherit or be called to the succession of her grandfather by *representation* inasmuch as her father was alive on the date of the death of her grandfather, as Article 899 of the Code specifically provides: "Persons deceased only can be represented; persons alive can not."

However, I cannot agree that "Since all the children of the deceased spouse renounced the succession, the surviving widow (in the absence of parents) became recipient of the accretion as she is the heir in the next rank or degree, under the provisions of Article 915, R.C.C."; for, in my opinion, the intervener, Mrs. Virginia Paline Sherrill, granddaughter of the deceased, could be called to the succession of her grandfather and could acquire an interest in the property by inheritance under other provisions of our law.

Articles 948, 979, and 1022 of the Revised Civil Code provide:

"When all the heirs in the nearest degree renounce the succession, which is accepted by those in the next degree, these last are considered as having succeeded directly and immediately to the rights and effects of the succession from the moment of the death of the deceased. * * *" (Article 948)

"A person can not accept a succession before it has fallen to him.

"Thus, a relation to the deceased in the second degree can neither accept nor renounce the succession, until he who is related in the first degree, has expressed his intention on the subject. * * *" (Article 979)

"The portion of the heir renouncing the succession, goes to his coheirs of the same degree; if he has no coheirs of the same degree, it goes to those in the next degree.

"This right of accretion only takes place in legal or intestate successions. In testamentary successions, it is only exercised in relation to legacies, and in certain cases." (Article 1022)

Under the plain provisions of the articles quoted above, upon the death of the grandfather, Joseph Paline, and upon the renunciation of his succession by his two sons, Paul and Emile Paline, the grandchildren, children of his son Paul, the heirs of the deceased in the next degree, in-

herited, not by representation, but in their own right, all the rights and effects of his succession from the moment of his death; and his surviving spouse, Mrs. Denise Granier Paline, did not inherit the property which belonged to his succession.

To say that the surviving spouse inherited the property in this case does violence to the plain provisions of the Revised Civil Code and to the cardinal ·principle of succession law that the nearest relation in the descending line is called to the succession of the deceased.

Article 877 of the Code provides: "Legal succession is that which the law has established in favor of the nearest relation of the deceased."

Article 888 provides: "The nearest relation in the descending, ascending or collateral line, *conformable to the rules hereafter established,* is called to the legal succession."

In conformity with the rules set out in that part of Article 915 hereinabove quoted, and Articles 948, 979, and 1022 of the Revised Civil Code, the nearest relations to the deceased, after the renunciation of the succession by his children, are his grandchildren. In my opinion there is nothing in the majority opinion to rebut this conclusion. The result reached by the majority opinion, as I appreciate it, is based on the interpretation placed on Act 408 of 1938 which amended Article 915, and by such interpretation the court finds a rule which makes the spouse the nearest

relation or the heir in the next degree under Article 1022 after the sons of the deceased have renounced. The 1938 amendment provides that the surviving spouse shall inherit "as a legal heir by operation of law, and without the necessity of compliance with the forms of law provided in this chapter for the placing of irregular heirs in possession of the successions to which they are called". The court finds that "By this amendment, the wife was virtually—for succession purposes as set forth in Article 888—placed in the same category as a blood relation to the deceased". I agree that by the 1938 amendment the wife was made a legal heir, or a regular heir, but I cannot agree that "The effect of the 1938 amendment is to include the wife in the definition of 'those in the next degree'" after the sons of the deceased have renounced under Article 1022; however, I concede that the surviving wife would inherit community property to the exclusion of collaterals when *all* of the descendants renounce, because under the plain provisions of Article 915 she is made an heir when there are no descendants.

The 1938 amendment, Act 408 of 1938, and the 1942 amendment, Act 82 of 1942, were enacted to facilitate the administration of community property when the wife is an heir, to obviate the necessity of the proceedings of an irregular succession in such case, and to eliminate the discrimination against a surviving spouse who comes

to the succession concurrently with other legal heirs.

This was pointed out by Messrs. Paul M. Hebert and Carlos E. Lazarus in "The Louisiana Legislation of 1938", 1 La.L. Rev. 80, 96, and by Mrs. Harriet S. Daggett, "Matters Pertaining to the Civil Code", 5 La.L.Rev. 83. The purpose was to eliminate discrimination as to the spouse, but it was never the intention, in my opinion, to place the spouse in a higher position in the succession line, or to accelerate the time when the spouse is called to the succession, and certainly it was never the intention to cause her to come to the succession to the prejudice of the descendants. The 1938 amendment has nothing whatever to do with the solution of the problem in this case. The grandchildren and the spouse are all legal heirs when called to the succession, but the problem here is which should be called to the succession of the deceased when all of the children renounce. In my opinion, under the plain language of Article 1022, the grandchildren are the heirs in the next degree to the deceased after the renunciation by the sons, who are in the first degree, and the succession goes to them.

Article 891 provides: "In the direct line there are as many degrees as there are generations. Thus the son is with regard to the father, in the first degree, the grandson in the second, and vice versa with regard to the father and grandfather toward the sons and grandsons." Certainly under

the provisions of this article the spouse could not be in the "next degree" unless there were no descendants capable of inheriting from the deceased.

I know of no provision of the Code or any law of this state which makes the grandchildren, who are in the "next degree" in this case, incapable of inheriting from the deceased. The most effective argument against their being capable of inheriting is that their father is still alive. But the fact that the father is alive makes no difference unless the grandchildren must inherit by representation. They do not inherit by representation in this case because there is no reason to employ this fiction which makes an exception to the rule that the nearest relation to the deceased inherits. In other words, these grandchildren do not have to be elevated by fiction to a nearer degree to the deceased so that they will stand in line with those who are the nearest relatives. The grandchildren are the nearest relatives to the deceased in their own degree after the renunciation by all of those of the first degree, and come to the succession in their own right and not by representation.

As pointed out by Cross on Successions, page 65, the nearest relation is always called to the succession. He may be called:

(1) As the heir in his own right, as when one is the nearest relative of the deceased in the order established by law;

(2) By representation, when one exercises the right which could have been ex-

ercised by a person if alive, but who was dead at the opening of the succession;

(3) By transmission, when he exercises the right of a person who dies after the succession is opened.

It cannot be seriously argued that grandchildren are not next of kin to a deceased after his own children, under the codal provisions, and therefore, if all the children renounce the succession, the grandchildren will be called to the succession as nearest relatives in the descending line under the cardinal rule of succession law. The question is how are they called to the succession. They are not called by representation because they are not exercising the right of a person who was dead at the opening of the succession; they are not called by transmission because they are not exercising the right of a person who died after the succession was opened. The grandchildren, therefore, are called to the succession in their own right.

So far as I have been able to find, the writers who have discussed this problem have been of the opinion that this result is the correct one.

Cross on Successions, page 509, says: " * * * We have seen that the grandchild inherits in his own right when he is nearest in degree; as in case of a son whose father has renounced and who comes to the succession, if he is nearest in degree, * * *. The grandchild who thus comes de son chef or in his own right inherits without assuming any obligations

derived from the father, who has never been heir; while he who comes by representation takes it as if his father were alive and had accepted the grandfather's succession. * * *"

The problem presented in this case was anticipated by Mr. Fontaine Martin, Jr., in his comment in 10 Tulane Law Review 614, 621, "Inheritance by Grandchildren in Their Own Right and by Representation", wherein it is stated:

"The presumptive heir loses his right to inherit in three cases: when he has been disinherited; when he has been excluded from the succession for unworthiness; and when he has renounced the succession. " * * * when all the heirs of the same degree renounce, the succession devolves upon the heirs of the next degree. Taking in their own right in these three cases, the grandchildren will divide the succession by heads.

"The conclusion to be drawn is that grandchildren always inherit by representation when their parents have predeceased them, whether the remaining descendants are in equal or unequal degrees of relationship to the de cujus. When, however, a person who, if predeceased, could have been represented, has survived the ancestor whose succession is to be distributed, and is excluded from the succession, because of his renunciation, disinheritance, or unworthiness, the descendants of such excluded person (or the descendants' representatives), will inherit in their

own right, provided that they are the nearest remaining descendants of the de cujus."

That writer further points out that the French Civil Code is even more explicit in Article 787 than our Code is in Articles 948, 979, and 1022. That article of the French Code provides that there can be no representation of an heir who has renounced: if the person renouncing is the only heir of his degree, or if all his coheirs renounce, the children inherit in their own right, by heads.

That writer further comments: " * * * Whether intentionally or by oversight, the drafters of the Louisiana Civil Code failed to adopt this article. The fact that Articles 948 and 979 of the present Louisiana Civil Code are the drafter's own handiwork, and lead to the same result as is imposed by the French Article 787, indicates that no deviation from the French rule was intended."

That no deviation from the French rule was intended is further shown by the fact that the Louisiana Civil Code, Article 973, specifically provides that the children of an heir declared unworthy inherit from their grandfather in their own right even when their father is alive at the time of the grandfather's death. It is illogical to say that the children of the heir excluded from the succession for unworthiness may inherit in their own right in their grandfather's succession, but that the children of the heir excluded from the succession

by renunciation may not inherit in their own right.

The French commentator, Toullier, discussed the situation wherein the presumptive heir has renounced or has been declared unworthy, and reached this same conclusion. 4 Toullier, Droit Civil Francais (5e éd. 1839) n° 201, 202, 203, page 198 et seq. We summarize his conclusion as set out in those sections thus:

The law calls in first order, to the exclusion of all other relatives, ascendant or collateral, the descendants of the deceased person. This calling of the descendants of the deceased to the exclusion of all other classes or lines is independent of the nearness of degree. They exclude all other relatives, ascendant or collateral, of an equal degree, or even those more nearly related to the deceased. For example:

Marc, not being able to represent Jean, his father, who renounces or has been declared unworthy, remains a relative of Auguste, his grandfather, in the second degree. Nevertheless he excludes from the succession both Jules, father of Auguste, who is in the first degree, and Raymond, brother of Auguste, who is in the second

degree, because relatives of the ascendant line and those of the collateral line, even brothers, are not called to the succession except in a case where the deceased does not leave descendants.

But, if Auguste had left other children and grandchildren, the extent of the right of each of them, in relation to the others, would be governed by the nearness of degree. They succeed in equal portions and by heads when they are in the first degree and are called of their own right; they succeed by roots when all or part of them come by representation. For example:

Auguste (deceased)

Marc     Charles (renouncing)     Brigitte

4 children     2 children     2 children

Marc and Brigitte, his sister, would succeed their father in equal portions because they are of the same degree and called of their own right. If Brigitte were dead, her children, being put in their mother's place by the effect of representation, would succeed concurrently with Marc, their uncle; but they would succeed by roots; they would receive only the portion which their mother would have had, that is to say, half of the estate, which they would share equally between them. Thus each of them would have only a fourth of the succession, while Marc would have a half. The children of Charles would not be able to succeed because of not being able to represent their father; they remain placed in the second degree.

If Marc and Brigitte were both dead, their children would come to the succession together and would partake by roots. The first would receive the half which Marc would have had, to share equally among them; the others, the share which Brigitte would have had, to share also equally between them. Thus the children of Marc would each have an eighth, those of Brigitte each a quarter.

If Marc and Brigitte were declared unworthy, their children, not being able to represent them, would find themselves in the same degree as those of Charles. All would succeed in their own right and would share the succession equally and by heads. Each would have an eighth.

Annotations to articles of Merrick's Revised Civil Code of 1925 show that the annotator considered that the rule in the French law would be applicable under our Code. I quote the following from Merrick's Revised Civil Code of that year:

"Art. 899 [895]. Only for those Dead. Persons deceased only can be represented; persons alive can not.

    *     *     *     *     *     *

"May inherit independent of representation in case of being next of kin to deceased, after him renouncing. 4 Toul. 197; Ib., 117, Sec. 112."

"Art. 902 [898]. Inheritance by Descendants. Legitimate children or their

descendants inherit from their father and mother, grandfathers or other ascendants, without distinction of sex or primogeniture, and though they may not born from different marriages.

"They inherit in equal portions and by heads, when they are in the same degree, and inherit by their own right; they inherit by roots, when all or part of them inherit by representation.

\* \* \* \* \* \*

"A dies, and B and C, his only sons, renounce; their children inherit per capita. 4 Toul. 200."

In my opinion, the district court was correct in recognizing Mrs. Virginia Paline Sherrill, intervener, to be the owner of an undivided one-tenth interest in the property involved in this lawsuit, in rejecting plaintiff's demands for specific performance, and in awarding to defendant judgment against plaintiff in the sum of $1,400.

I respectfully dissent.