**Nina MIGLIONICO and Doyle W. Ramey, as Executors of the Estate of Mary Lou Young Johns, deceased, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 69–558–S.

United States District Court, N. D. Alabama, S. D.

Feb. 25, 1971.

Harold I. Apolinsky, Sirote, Permutt, Friend & Friedman, Birmingham, Ala., for plaintiffs.

Lynn Ross, Asst. U. S. Atty., Birmingham, Ala., for defendant.

## MEMORANDUM OF DECISION

POINTER, District Judge.

This case has been brought under 28 U.S.C. § 1346(a) (1) for the recovery of estate taxes alleged to have been erroneously collected from the Estate of Mary Lou Young Johns, deceased. The sole issue for decision [1] by the court is whether certain shares of stock, registered in the name of decedent and her husband, are to be excluded from her "gross estate".

### FINDINGS OF FACT

Upon a consideration of the stipulations of the parties and the evidence adduced during trial, the court finds the facts to be as follows:

In late 1950 decedent's husband purchased 8249.641 shares of capital stock of Investors Mutual, Inc., registering

---

[1]. Initially there was also the question of inclusion of part of a bank account in their joint names. At trial however the parties agreed that, if includable, such proceeds would nevertheless qualify for the marital deduction in full, making this question in effect moot.

them in the name of "Llewellyn W. Johns and Mary Lou Young Johns, tenants in common." Mr. Johns did not intend by this registration—nor indeed did he at any time ever intend —to make a gift to his wife of any part of this stock. He kept the certificate in a bank vault to which his wife did not have access.

The funds used to make the purchase belonged legally to Mr. Johns, being the proceeds realized on the sale by him of the family funeral business. Due to changes in the burial insurance industry in the state, Mr. Johns was, in effect, forced out and in the position of having to accept what he could get for the business.

At this time and periodically thereafter until her death in 1963—Mrs. Johns was emotionally disturbed and under psychiatric care. Her condition was sufficiently serious as to require her confinement in a state mental hospital on several occasions. Her illness, at least in part, was attributable to her feelings concerning the youngest of her three children, a son who was without sight and somewhat mentally retarded.

In error the check for the proceeds from the sale of the family business —$115,000—was made out in the names of both Mr. and Mrs. Johns. Reluctant to make a big issue on the subject with the purchaser under the circumstances, and not wanting to upset his wife further in her condition, Mr. Johns accepted finally the check in this form and also agreed to his wife's suggestion that this money be set aside in an investment. Mrs. Johns envisioned this fund—the Investors Mutual stock—as the means by which either her husband or their older son could someday re-enter the mortuary business. She expressed the fear that, without her signature being required, Mr. Johns might in acts of generosity dissipate the fund.

To preserve family harmony in the face of his wife's expressed concerns, Mr. Johns had the stock registered in both their names so as to require both as a condition to any disposition. Moreover, a bank account was opened in their joint names (with right of survivorship), with a provision requiring both their signatures on any disbursements; and this account was then used as the depository for dividends on the Investors Mutual stock.

Mrs. Johns did not claim beneficial ownership in the stock. What she did claim was a power to veto a disposition of the stock and the dividends therefrom and a testamentary power to appoint half of the stock among her children and grandchildren.

Throughout the remaining years of his wife's life, Mr. Johns did not openly dispute—for the sake of harmony in the family and mindful of his wife's condition—her claim to these powers over the stock. Upon her death he, however, asserted his claim in full ownership of the shares—denying that she had been a true owner of any beneficial interest and stating that at most she had been a trustee. This claim was made promptly after her death, and months before filing of any estate tax return. Mr. Johns was not a beneficiary under his wife's will and had no right to dissent from it— his claim was adverse in a legal sense to that of the beneficiaries under the will (his children and grandchildren), though it does not appear that there was any personal animosity at that time within the family. The two adult children did not contest the facts claimed by Mr. Johns and indeed signed a release of any claim on their part to such stock. The Executrix of Mrs. Johns' Estate and the Guardian ad Litem appointed to represent the youngest Johns child did, however, deny his claim and instead assert on behalf of the Estate a claim to half the stock.

The matter was heard by the Probate Judge of Jefferson County, Alabama, and decided by him in favor of Mr. Johns and against the contentions of the Executrix and the Guardian ad Li-

tem. It was an adversary proceeding with qualifications—that is, while there was no anger or bitterness between the two sides, there was a difference of opinion, an expression of these differences before the Probate Judge and the presentation of evidence with cross-examination. There was little actual dispute about the facts, the principal difference being in the legal conclusions to be drawn therefrom. The court's decree was that Mr. Johns "was the absolute owner of the shares of stock of Investors Mutual Inc. evidenced by Certificate #206590 and that the Estate of Mary Lou Young Johns is not the owner of any part thereof and that the Executors of the Estate of Mary Lou Young Johns deliver said Certificate over to the said Llewellyn W. Johns, Sr., for his own use and benefit."

## CONCLUSIONS OF LAW AND OPINION

■ As between strangers, when one buys property in the name of another, furnishing all the consideration, a presumption arises that a trust was intended, and the same can be enforced as a "resulting trust". See Roubicek v. Roubicek, 246 Ala. 442, 21 So.2d 244 (1945). When, however, the relationship is husband and wife, a different presumption arises—namely, that the husband intended to make a gift to the wife. Williams v. Williams, 261 Ala. 328, 74 So.2d 582 (1954). *Cf.* Marshall v. Marshall, 243 Ala. 169, 8 So.2d 843 (1942) (wife furnishing consideration for purchase in husband's name). In either case, the presumption is rebuttable —the ultimate question is the intention of the party acquiring the property. Barnett v. Barnett, 262 Ala. 655, 80 So. 2d 626 (1955), cited by the Government, held that the presumption in favor of a gift was not rebutted by the evidence in that case, particularly inasmuch as the funds used to acquire the property had come not solely from the husband but rather from the joint efforts of the couple.

■ In the case *sub judice* there was no intention on the part of Mr. Johns to make a gift to his wife—he did furnish the entire consideration for the stock and never gave up his claim to full ownership of the stock, albeit he did not press the point with his emotionally sick wife. She was not a beneficial owner of this stock as that term is used in Reg. § 20.2033–1(a). McCann v. Com'r of Internal Revenue, 87 F.2d 275 (6th Cir. 1937); Reed v. Com'r of Internal Revenue, 36 F.2d 867 (5th Cir. 1930); Robertson v. United States, 281 F.Supp. 955 (N.D.Ala.1968). Nor did the veto power which Mrs. Johns was allowed to possess during her life constitute a general power of appointment under I.R.C. § 2041.

■ This court then finds itself, as regards the "gross estate", of the same opinion as did the Probate Court regarding Mrs. Johns' probate estate. The finding and decree of this state court, while not conclusive [Com'r of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967)], is entitled nevertheless to appropriate recognition and weight by this court since it did indeed determine property rights between parties with adverse interests and was not collusively brought or maintained. That it lacked the type of antagonism which in a factious family might have resulted in bitter appeals to the appellate courts of the state is a matter which goes to the weight of those findings to the case at bar. There was substantial evidence before the Probate Court on which it could have found that Mrs. Johns had no beneficial interest. Finding itself in accord with the conclusions reached in the state court proceedings, this court is *a fortiori* not prepared to challenge the state court's findings of those facts. *Cf.* Lakewood Plantation, Inc. v. United States, 272 F. Supp. 290 (D.S.C.1967). Also see First Nat'l Bank of Amarillo v. United States, 422 F.2d 1385 (10th Cir. 1970).

The 8249.641 shares of Investors Mutual Inc. stock was not includable in the gross estate of Mary Lou Young Johns,

deceased, and the plaintiff is entitled to recover the estate taxes and interest collected by reason of the erroneous inclusion of such shares in the gross estate, together with such taxes and interest as are attributable to the erroneous inclusion in the taxable estate of the joint bank account. The parties will present to the court a form of judgment calculating the recovery to be had by plaintiff in accordance with this decision.