ESTATE OF KATE M. GIBSON, DECEASED, GEORGE W. GIBSON, JR., EXECUTOR, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3511-74.    Filed January 26, 1976.

George W. Gibson, Jr. (executor), for the petitioner.
*Robert E. Glanville,* for the respondent.

## OPINION

Section 2053(a)[5] provides, in general, that claims against the estate of the decedent which are allowable under the laws of the State in which the estate is being administered are deductible from the gross estate.

In order to determine whether the estate is entitled to a deduction under section 2053 for a usufructuary accounting to the forced heirs of George, we must first determine whether prior to her death the interest held by decedent in oil and gas leases with respect to land situated in Louisiana was merely the usufruct interest[6] in the leases or whether as a result of the succession proceedings of her husband she received full ownership of such leases.

Petitioner's argument is that at her death Kate Gibson was possessed of no more than a usufruct interest in the oil and gas leases and that such usufruct interest constituted an imperfect usufruct so that under Louisiana law her estate is required to give an accounting to the forced heirs of her husband in the amount of the value received by decedent during the period of time she was possessed of the usufruct interest. It is respondent's position that under Louisiana law there is no requirement of a usufructuary accounting and therefore no deduction under section 2053 because decedent was possessed of perfect ownership[7] to the oil

---

[5] SEC. 2053. EXPENSES, INDEBTEDNESS, AND TAXES.

(a) GENERAL RULE.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

    (1) for funeral expenses,

    (2) for administration expenses,

    (3) for claims against the estate, and

    (4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,

as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

[6] A usufruct interest in property is purely a civil law concept. It is generally comparable to the common law concept of a life estate, but there are distinctions. See *Estate of Jeanne Lepoutre*, 62 T.C. 84 (1974).

[7] La. Civ. Code Ann. arts. 488 and 490, provide as follows:

Art. 488. Ownership, definition

Art. 488. Ownership is the right by which a thing belongs to some one in particular, to the exclusion of all other persons.

Art. 490. Perfect and imperfect ownership; naked ownership

and gas leases as a result of the succession proceedings of her husband. We agree with respondent's position.

In 1955, George's will was submitted for ancillary probate proceedings in Caddo Parish, La. Louisiana is a community property State and the oil and gas lease interests held with respect to land situated in Caddo Parish, La., constituted a portion of the community property of the marriage of George and decedent. The leasehold interests were the sole properties held by decedent and George in Louisiana at the date of George's death.

George's will provided that all property was to go to decedent, his wife. Although the will met all formal requirements of Louisiana law so that it could be submitted for probate, the dispositive provision leaving all property to the wife was not in accord with Louisiana law.

Louisiana law does not allow a parent to cut off a legitimate child from inheriting a portion of the parent's property unless he has just cause. Any attempt of the parent through provisions contained in the will to provide otherwise will not be honored. At the date of George's death he was survived by decedent and three legitimate children, each having reached the age of majority. Articles 1493 and 1495, La. Civ. Code Ann. (West 1972),[8] provide that where an individual dies leaving three legitimate children, as in the case before us, that individual cannot dispose of more than one-third of his property by will. The remaining two-thirds is preserved for the children as forced heirs of the parent with that portion known as the legitime. The legitime

---

Art. 490. Ownership is divided into perfect and imperfect.

Ownership is perfect, when it is perpetual, and when the thing is unincumbered with any real right towards any other person than the owner.

On the contrary, ownership is imperfect, when it is to terminate at a certain time or on a condition, or if the thing, which is the object of it, being an immovable, is charged with any real right towards a third person; as a usufruct, use or servitude.

When an immovable is subject to a usufruct, the owner of it is said to possess the naked ownership.

[8] Art. 1493. Disposable portion when legitimate children survive

Art. 1493. Donations *inter vivos* or *mortis causa* can not exceed two-thirds of the property of the disposer, if he leaves, at his decease, a legitimate child; one-half, if he leaves two children; and one-third if he leaves three or a greater number.

Under the name of *children* are included descendants of whatever degree they be, it being understood that they are only counted for the child they represent.

* * *

Art. 1495. Forced heirs; legitimate children and parents.

Art. 1495. In the cases prescribed by the two last preceding articles, the heirs are called *forced heirs,* because the donor can not deprive them of the portion of his estate reserved for them by law, except in cases where he has a just cause to disinherit them.

retained in favor of the forced heirs can be subjected to a usufruct interest in favor of the surviving spouse. Therefore, in this case, if no further steps had been taken by the Gibson family subsequent to George's death during the course of the probate of his will in Louisiana, the dispositive provision of the will leaving all property to the wife would not have been honored because such clause under this family's circumstances contravened Louisiana law. Rather than receiving all property as provided by the will, the wife would have retained her one-half of the community property and her legacy would have been limited to the disposable one-third of her spouse's half interest in the community property. The forced heirs would have received the remaining two-thirds of their father's estate subject to a usufruct interest in favor of the wife of the community property of the husband passing to the forced heirs by operation of law. The forced heirs are said to hold the naked ownership of the thing which is subject to the usufruct interest. *Winsberg v. Winsberg,* 96 So. 2d 44 (La. 1957); La. Civ. Code Ann. art. 916 (West 1972).[9]

---

[9] Arts. 915 and 916 provide as follows:

Art. 915. Community property; inheritance rights of descendants, surviving spouse, and parents

Art. 915. When either husband or wife shall die, leaving neither a father nor mother nor descendants, and without having disposed by last will and testament of his or her share of the community property, such undisposed of share shall be inherited by the surviving spouse in full ownership. In the event the deceased leave descendants, his or her share in the community estate shall be inherited by such descendants in the manner provided by law. Should the deceased leave no descendants, but a father and mother, or either, then the share of the deceased in the community estate shall be divided in two equal portions, one of which shall go to the father and mother or the survivor of them, and the other portion shall go to the surviving spouse, who, together with father or mother inheriting in the absence of descendants, as provided above, shall inherit as a legal heir by operation of law, and without the necessity of compliance with the forms of law provided in this chapter for the placing of irregular heirs in possession of the successions to which they are called. * * *

Art. 916. Community property; surviving spouse's usufruct on decedent's share inherited by common issue

Art. 916. In all cases, when the predeceased husband or wife shall have left issue of the marriage with the survivor, and shall not have disposed by last will and testament, of his or her share in the community property, the survivor shall hold a [in] usufruct, during his or her natural life, so much of the share of the deceased in such community property as may be inherited by such issue. This usufruct shall cease, however, whenever the survivor shall enter into a second marriage.

Also see Yiannopoulos, "Testamentary Dispositions in Favor of the Surviving Spouse and the Legitime of Descendants," 28 La. L. Rev. 509 (1968).

At p. 521 the author states: "if the testator attempts to give to the survivor in perfect ownership more than the laws of forced heirship allow, the excessive donation will be reduced to the disposable portion which will devolve to the wife in perfect ownership. In addition the surviving spouse will receive the usufruct over the forced portion inherited by issues of the marriage."

In this country a usufruct interest is peculiar to the State of Louisiana being derived from the civil law of France. Such an interest is defined in article 533 as "the right of enjoying a thing, the property of which is vested in another, and to draw from the same all the profit, utility and advantages which it may produce, provided it be without altering the substance of the thing. The obligation of not altering the substance of the thing takes place only in the case of a perfect usufruct."

The Civil Code then provides for two types of usufruct interest with different rights and obligations accruing to the holder of the usufruct interest upon the determination of whether the interest constitutes a perfect or an imperfect usufruct. Article 534 [10] sets out the distinction between perfect and imperfect usufruct where it states:

Art. 534. There are two kinds of usufruct:

Perfect usufruct, which is of things which the usufructuary can enjoy without changing their substance, though their substance may be diminished or deteriorated naturally by time or by the use to which they are applied; as a house, a piece of land, furniture and other movable effects.

And imperfect or *quasi* usufruct, which is of things which would be useless to the usufructuary, if he did not consume or expend them, or change the substance of them, as money, grain, liquors.

It is petitioner's contention that the decedent held only the usufruct interest in the oil and gas leases with respect to land situated in Louisiana and that such usufruct interest constitutes an imperfect usufruct thereby making the provisions of article 549 applicable.[11] Therefore, it follows under petitioner's contention that decedent was possessed of an imperfect usufruct in the leases and that her estate pursuant to article 549 is required to give an accounting to the forced heirs upon the expiration of the interest which occurred on the date of her death.[12]

---

[10] All article references herein are to the Louisiana Civil Code Annotated.

[11] Art. 549. Imperfect usufruct of consumable things

Art. 549. If the usufruct includes things, which can not be used without being expended or consumed, or without their substance being changed, the usufructuary has a right to dispose of them at his pleasure, but under the obligation of returning the same quantity, quality and value to the owner, or their estimated price, at the expiration of the usufruct.

[12] Our determination that decedent was not possessed of merely the usufruct interest removes the necessity of determining whether a usufruct interest in an oil and gas lease was an imperfect usufruct or a perfect usufruct under Louisiana law in effect at the date of George's death. The Louisiana courts had not been required to reach an answer. However, the enactment of the Louisiana Mineral Code effective Jan. 1, 1975, provides that such interest is an imperfect usufruct.

Articles 193 and 194 of the Louisiana Mineral Code provide as follows:

However, in the case before us, the family proceeded with further steps during the course of the probate of George's will. On January 9, 1955, each of the children as a forced heir of George executed a renunciation of all inheritance rights as forced heir of their father under Louisiana law and expressly ratified the provisions of their father's will which left all property to the decedent. Such renunciations were executed after each child had reached his or her age of majority and otherwise complied in all respects with Louisiana law regarding renunciation of a succession.[13]

Sec. 193. Nature of usufruct of a mineral right

Except as provided in Article 194, one who has the usufruct of a mineral right, as distinguished from the usufruct of land, is entitled to all of the benefits of use and enjoyment that would accrue to him if he were the owner of the right. He may, therefore, use the right according to its nature for the duration of his usufruct.

Comment

This article solves a problem not yet treated by the courts. That a usufruct may exist on mineral rights is unquestioned. La. Civil Code art. 541 (1870). The very nature of usufruct is that it is the "use and enjoyment of a thing." If the thing is an incorporeal which must be exercised to be enjoyed, such as a mineral servitude or mineral lease, there can be little question that the usufructuary should be entitled to make use of it according to its nature. Further, the usufructuary is charged to preserve the thing subject to the usufruct. Mineral rights, particularly servitudes and leases, cannot be preserved without being used. La. Civil Code arts. 535, 567 (1870). All of these principles are buttressed by common sense in this situation. The usufruct would be meaningless without the right to exercise the mineral right in question. * * *

Sec. 194. Usufructuary obligated to account to naked owner

A usufructuary of land benefitting under Article 190 or 191 or a usufructuary of a mineral right is obligated to account to the naked owner of the land or of the mineral right for production or the value thereof or any other income to which he is entitled. The accounting for production or the value thereof shall be on the basis of the price received by the usufructuary or, if the production was used or disposed of by the usufructuary other than by sale, on the basis of the value at the time of severance. The usufructuary is also obligated to reserve and give or pay to the naked owner such portion of the production or the value thereof as may be necessary to pay income and severance taxes due.

Comment

Article 194 limits the usufructuary of land who has rights in minerals under Articles 190 or 191 and the usufructuary of a mineral right to the benefits of an imperfect usufruct in that they must account to the naked owners on termination of the usufruct. The accounting is to be on the basis of the value received or, if production is disposed of other than by sale, on the basis of value at the time of severance. * * *

[13] Renunciation of succession is governed by arts. 1014-1031. The provisions pertinent to our discussion are set out below.

Art. 1017. Express renunciation required

Art. 1017. The renunciation of a succession is not presumed, it must be made expressly by public act before a notary, in presence of two witnesses.

Art. 1022. Accretion of renounced successions

Art. 1022. The portion of the heir renouncing the succession, goes to his coheirs of the same degree; if he has no coheirs of the same degree, it goes to those in the next degree.

This right of accretion only takes place in legal or *intestate* successions. In testamentary successions, it is only exercised in relation to legacies, and in certain cases.

Art. 1023. Accretion by operation of law

Art. 1023. The accretion operates of full right independently of the will of the person for

Therefore, we must ascertain what interests the wife received in her husband's share of the community as a result of the execution of the renunciation by each of the forced heirs of George.

Article 946 [14] provides that if an heir rejects the inheritance to which he is entitled he is treated as never having received the succession. In *Paline v. Heroman,* 29 So. 2d 473 (La. 1946), the Supreme Court of Louisiana stated that "article 946 declares that if an heir rejects (renounces) the succession, he is considered as never having received it, and it follows that the rights of other heirs become the same as if the renouncing heir had never been an heir, in fact as if he had never existed." [15]

Article 915 [16] provides that first inheritance rights of the community property upon the death of the husband belong with the descendants. If there are no descendants and no father or mother surviving the decedent, and if he dies intestate, then the undisposed portion passes to the surviving spouse.

Article 1022 provides that the portion of the heir renouncing the succession goes to the coheirs of the same degree and if there are none then it goes to those in the next degree. Therefore, since all children of George renounced the succession, the surviving widow (in the absence of parents) [17] is the recipient of the

whose benefit it is, and whether he be ignorant or not of the renunciation which gave rise to it.

[14] Art. 946. Seizin; effect of acceptance or rejection of succession

Art. 946. Though the succession be acquired by the heir from the moment of the death of the deceased, his right is in suspense, until he decide whether he accepts or rejects it.

If the heir accept, he is considered as having succeeded to the deceased from the moment of his death; if he rejects it, he is considered as never having received it.

[15] In *Paline v. Heroman,* 29 So. 2d 473 (La. 1946), the husband died intestate, leaving a widow and two sons. Both sons executed renunciations of their share and the widow was placed in possession of the entire estate, one-half in her own right and one-half by virtue of the renunciations executed by the children. The court determined that the widow received full ownership of the property because after the renunciations of the children she was the heir of the next degree with the portion of the renouncing heirs going to the heir in the next degree where all forced heirs have renounced by virtue of arts. 915 and 1022. The determination of what quantum of interest the wife received was necessary because the court was required to determine what interest the children had received through the will of the mother upon her death. The court held that the mother had perfect ownership to pass to the children and therefore there was no defense to a suit of specific performance brought by the children against the prospective purchaser of the property. The purchaser had argued that the wife was not the heir of the next degree, but that the children of the renouncing forced heirs should be so classified.

The principle of the *Paline* case, *supra,* that the wife is the heir in the next degree after the renunciation of succession of the forced heirs and that she receives all property was followed in *Succession of Norton,* 157 So. 2d 909 (La. Ct. App. 1963).

[16] See n. 9 *supra.*

[17] There is no evidence as to whether the parents of George were still alive at his death. Petitioner has not raised such fact to argue against the result reached in *Paline v.*

accretion as she is the heir in the next rank or degree as provided by article 915.

The Supreme Court of Louisiana concluded that article 1022 includes the wife as being within the definition of "those in the next degree." Therefore, the court then concluded:

> Reading and considering together the provisions of Article 915 which deals with the rights of heirs to inheritance of community property and sets forth as recipients, first descendants and secondly, ascendants and surviving spouse as coheirs, and Article 1022, which states that the portion of renouncing heirs goes "to those in the next degree", we conclude that since all the children of the deceased spouse renounced the succession, the surviving widow (in the absence of parents) became recipient of the accretion as she is the heir in the next rank or degree, under the provisions of Article 915, R.C.C. [*Paline v. Heroman, supra* at 476.]

In the instant case we have determined that in the same manner as above the decedent received full ownership. It necessarily follows that the estate is free from the requirement of a usufructuary accounting of the leasehold interest in the producing fields because decedent received the full quantum of ownership that her husband was able to transmit at death and therefore it is not subject to a naked ownership interest in the children. Each of the forced heirs of George renounced his inheritance rights and therefore Kate, being the heir of the next degree, received full ownership of the one-half interest her husband had in the community property.[18]

In our view the result we have reached follows the clear intent of the individuals involved in the succession proceedings of George in that they all desired that the widow, Kate Gibson, would have full and complete control along with ownership of the partnership interests held in the producing fields.

---

*Heroman, supra.* We have assumed that the parents did not survive George.

[18] It is not clear under Louisiana law whether the property moves to the wife subsequent to the execution of the renunciations by the forced heirs of her spouse by passing through the will by virtue of the provision in the will leaving all property to the wife or whether such result is obtained by operation of law. Pursuant to the provisions of arts. 915, 916, 946, 1022, and 1023, such interest passes by operation of law and here this passing is confirmed by the provisions of the will. For purposes of determining if the estate is required to give a usufructuary accounting, the end result is the same in this case whether the renounced interests passed by operation of law or by the will. The will and the Louisiana Civil Code provisions both grant the wife full ownership to all of the community property situated in Louisiana. The importance of the nature of the passing of the property might be different in a case concerning State priority for the satisfaction of claims, payments of debts, etc.

The order of the court issued pursuant to the succession proceedings of decedent's husband considered the acts of renunciation by the forced heirs and provided that "Kate Mallard Gibson, be and she is hereby recognized as the surviving widow in community of G. W. Gibson, deceased, and she is now recognized and sent into possession of her undivided one-half ($\frac{1}{2}$) interest in all property of the community existing between her and decedent," and "Kate Mallard Gibson, be and she is hereby recognized as the sole instituted heir of decedent under his last will and testament and as such she is hereby sent and put into possession in full ownership of the undivided one-half ($\frac{1}{2}$) interest of decedent in and to all property of the community existing between Petitioner and decedent, and particularly" the oil and gas lease interests held in land situated in Louisiana.

Subsequent to this judgment decedent exercised complete dominion and control over the leases. The Ober, Stoer, Hardy, and Jones leases were sold and no evidence was produced to show that anyone joined with decedent in the execution of the assignment of those interests. In 1955 and 1956 decedent made gifts to the children of undivided interests in the Hobbs leases. The gift tax return (Form 709) filed by decedent pursuant to the gifts described the interests as interests in the lease and not as gifts of usufruct interests.[19] By 1966 with a possible minor exception (see n. 4 *supra*), all interests in the partnerships in Caddo Parish had been sold.

Petitioner has also argued that we should view the property interest held by decedent as a result of the succession proceedings of her husband "as if" there was a usufruct interest because decedent would have had the same basic rights in the leases under a usufruct interest as she would as full owner. Whether petitioner's conclusion that decedent's rights in the leases under a usufruct would have been the same as her rights as full owner we need not decide. The form of the transaction chosen by the family had substance in that it created the property interest they felt was required to give decedent the control necessary to maintain a harmonious relationship with the other partners. The family voluntarily created the full ownership interest in decedent

---

[19] One of the children (forced heirs) of decedent predeceased her. In the inventory filed subsequent to his death there was no value included of a naked ownership of any of the leasehold interests that are before us.

through the renunciations and are bound by the tax ramifications that result from this action.

Petitioner has argued that the forced heirs had the right to revoke the renunciations signed in 1955. However, no evidence was presented to show that a revocation was ever contemplated by any of the forced heirs. Furthermore, under article 1031 it is apparent that a renunciation cannot be revoked once the property has been accepted by another heir. We think it is clear that the exercise of complete dominion and control over the leases by decedent shows that she accepted the interest as heir of the next degree pursuant to the renunciations executed by the forced heirs.[20]

Our determination that there was no usufruct interest,[21] but that decedent held full ownership interest in the oil and gas leases disposes of the other questions that we would otherwise be required to resolve.[22] Since under our holding there would be no requirement of the estate of decedent to give a usufructuary accounting to the forced heirs of George under Louisiana law,

---

[20] Art. 1031. Revocation of renunciation

Art. 1031. So long as the prescription of the right of accepting is not acquired against the heirs who have renounced, they have the faculty still to accept the succession, if it has not been accepted by other heirs, without prejudice, however, to rights which may have been acquired by third persons upon the property of the succession, either by prescription, or by lawful acts done with the administrator or curator of the vacant estate.

In like manner, so long as the prescription of renunciation is not determined, the heir may still renounce, provided he has done no act to make himself liable as heir.

See *Succession of Hymel*, 21 So. 641 (La. 1897).

[21] Assuming, arguendo, that upon the death of George a usufruct interest had been created in favor of the decedent such interest would have disappeared subsequent to the execution of renunciation by the forced heirs and acceptance by decedent of the undivided interest in her husband's share of the community property. Arts. 619 and 620 provide that the usufruct interest is extinguished when the usufruct and ownership of property is vested in one and the same person.

Art. 619. Confusion of usufruct and ownership

Art. 619. The usufruct is extinguished by the usufruct and the ownership being vested in one and the same person, that is, when the owner acquires the usufruct, or when the usufructuary acquires the naked ownership. The reason is that no servitudes can be due by a thing to the owner of such thing.

Art. 620. Nullity of usufructuary's acquisition of naked ownership

Art. 620. If the usufructuary acquires the naked ownership, the usufruct is thereby so extinguished, that if afterwards he loses the ownership, the entire ownership is lost to him, and the usufruct does not revive, unless the title, by which he acquired the ownership be annulled for some previously existing defect or some vice inherent in the act; for in that case the usufructuary never having been the owner, no consolidation has taken place, and the usufruct continues.

[22] Thus, there is no requirement for us to determine whether a usufruct interest in an oil and gas lease would constitute an imperfect usufruct under Louisiana law in effect at the date of George's death. Also there is no requirement to determine for Federal tax purposes whether a claim of such nature recognized under State law is deductible as a claim against the estate within the meaning of sec. 2053.

there is no deduction allowable to the estate under section 2053 because there is no claim enforceable against the estate under the laws of the administering State. *United States v. Stapf,* 375 U.S. 118 (1963).

Petitioner contends that there was an agreement between decedent and the children that if the children would execute renunciations of their rights as forced heirs of George under Louisiana law, decedent upon her death would return to each child an equal portion of her estate through provisions of her will. Although petitioner does not specifically contend that the agreement has independent significance in that such an agreement to devise property gives rise to a claim against the estate by the children, we feel that the assertion of such an agreement warrants discussion.

The only evidence presented that such an agreement was made was vague, oral testimony of the executor. In our view this oral testimony is insufficient to establish the fact that such an agreement existed.

However, even if we were to accept these unsupported statements as establishing the fact of an agreement by decedent to provide for the children through her will, no deduction for a claim against the estate within the meaning of section 2053 would be allowable. This section allows as a deduction valid claims against the estate, but does not include "a deduction where the underlying transaction was 'essentially donative in character.'" *Bank of New York v. United States,* 526 F. 2d 1012 (3d Cir. 1975, 37 AFTR 2d 149,944, 75-2 USTC par. 13,109). Also see *In re Estate of Hartshorne,* 402 F. 2d 592 (2d Cir. 1968), affg. 48 T.C. 882 (1967).

In our view the provisions of the will of decedent were testamentary dispositions to the natural objects of her bounty rather than the discharge of a contractual obligation. The decision made in regard to the execution of the renunciations was made because it was to the benefit of the family as a whole for decedent to be in full control of the partnership interest. To have done otherwise would have been economically unsound because there was a lack of a market in which to sell interests of the size held by George at his death. It is clear that the children received property from their mother's estate as beneficiaries. No formal claim was presented to the estate and apparently the children in no way contested specific bequests of money to decedent's sister

and sister-in-law which would not comply with an agreement to leave all property to the children.

Under Louisiana law whether decedent died testate or intestate, her children remained forced heirs under article 1493. This section limits the amount decedent could dispose of by will to one-third of her property.

Section 2053(c)(1)(A) [23] requires that for a claim to be deducted within the meaning of section 2053(a) the claim must be contracted bona fide for adequate and full consideration in money or money's worth. In the case before us we conclude that the intention of the parties was to provide decedent the interests required to operate the partnership interest in the oil and gas leases because this action was of benefit to the entire family, and there was no intent to create a contractual relationship with respect to decedent's disposition of those interests. If any agreement was in fact made, this record does not show that it was the result of arm's-length bargaining. In our view, even if some vague understanding existed as to decedent's disposition of her property, it was not contracted bona fide for adequate and full consideration and therefore does not give rise to a deductible claim under section 2053.

Petitioner cites us to several cases arising in common law jurisdictions where property has been held not to be includable within the decedent's gross estate. These cases are all distinguishable from the instant case. The case first cited by petitioner is *Reed v. Commissioner,* 36 F. 2d 867 (5th Cir. 1930). There, a father agreed to devise his estate to his children at his death in return for the children's conveyances to him of interests in estates of their father's first and second wives. The court held that under Texas law such agreement had the effect of creating a trust in favor of the children of the property conveyed by them and therefore such property was not includable in his gross estate.

---

[23] SEC. 2053(c). LIMITATIONS.—

(1) LIMITATIONS APPLICABLE TO SUBSECTIONS (a) AND (b).—

(A) CONSIDERATION FOR CLAIMS.—The deduction allowed by this section in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded on a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth; except that in any case in which any such claim is founded on a promise or agreement of the decedent to make a contribution or gift to or for the use of any donee described in section 2055 for the purposes specified therein, the deduction for such claims shall not be so limited, but shall be limited to the extent that it would be allowable as a deduction under section 2055 if such promise or agreement constituted a bequest. * * *

However, *Mansfield Hardwood Lumber Co. v. Johnson,* 268 F. 2d 317, 319 (5th Cir. 1959), points out that Louisiana civil law prohibits the imposition of a constructive trust or equitable lien on property. In the other cases cited by petitioner, *Miglionico v. United States,* 323 F. Supp. 197 (N.D. Ala. 1971), and *Silverman v. McGinnes,* 259 F. 2d 731 (3d Cir. 1958), property was held not to be includable in the estate of decedent because he did not have beneficial ownership of the property. This is not the case before us. During her lifetime subsequent to her husband's death, decedent had full dominion and control over the leasehold interests. She made gifts of various interests, exercised managerial control and eventually sold her interests. There is no basis to exclude the value of such property from her estate.

*Decision will be entered for the respondent.*